UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WANDA STRANGE,<br><br>          Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>          Defendants. | No. CV 05-2077-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 24, 2005, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on May 5, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 8, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 21, 1958. [Administrative Record ("AR") at 28, 65.] She has a high school education, and no relevant past work experience. [AR at 28, 40, 95, 98.]

On November 21, 2002, plaintiff protectively filed an application for Supplemental Security Income payments, in which she alleged that she has been unable to work since January 1, 1990, due to, among other things, seizures and high blood pressure. [AR at 65-77, 88-89.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on April 28, 2004, at which plaintiff appeared with counsel and testified on her own behalf. Plaintiff's son and a vocational expert also testified. [AR at 24-44.] On July 21, 2004, the ALJ determined that plaintiff was not disabled because she retains the ability to perform a significant range of light work activity.[1] [AR at 16-22.] When the Appeals Council denied review on February 10, 2005, the ALJ's decision became final. [AR at 6-9.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's

---

[1] Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b).

2

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of disability. [AR at 17, 21.] At step two, the ALJ concluded that plaintiff has the severe impairments of seizure disorder, headaches, hypertension, and obesity. [AR at 18, 21.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. [Id.] The ALJ further determined that plaintiff retains the residual functional capacity[2] to perform light work with certain limitations. [AR at 19, 21.] At step four, the ALJ determined that plaintiff has no past relevant work. [AR at 20, 21] At step five, the ALJ concluded that, although plaintiff's limitations do not allow her to perform the full range of light work, there are still a significant number of jobs in the national economy that she can perform. [Id.] Accordingly, the ALJ found plaintiff not disabled. [AR at 21-22.]

/
/
/
/

---

[2] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

4

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) failed to properly evaluate her testimony; (2) failed to properly evaluate the testimony of her son, Keymont Hood; and (3) failed to properly evaluate her alleged mental impairment. Joint Stipulation ("Joint Stip.") at 4. The Court agrees that the ALJ erred in assessing plaintiff's credibility, and remands the matter for further proceedings.

**THE ALJ'S DETERMINATION OF PLAINTIFF'S CREDIBILITY**

The ALJ concluded that plaintiff suffers from a seizure disorder, headaches, hypertension, and obesity. [AR at 18, 21.] During the administrative hearing, plaintiff testified that she frequently experiences seizures which cause her to lose consciousness and, at times, suffer from headaches and loss of control over urination and bowel movements. [AR at 29, 31, 35.] Following a seizure, she often sleeps for three hours or more. [AR at 35.] She takes the medication Dilantin, and although her doctors have increased the dosage during the past years, she does not think it alleviates the side effects or reduces the frequency of the seizures. [AR at 31-32, 36.] According to plaintiff, she had three or four seizures during the week preceding the hearing. [AR at 34.] She also complained of pain and loss of mobility in her left arm. [AR at 36.]

After considering her subjective complaints, the ALJ determined they were "exaggerated and, therefore, less than fully credible." [AR at 18.] The ALJ based this determination on the following reasons: (1) plaintiff "could not really testify confidently as to how often her seizures occur"; (2) she acknowledged that Dilantin helps to control the seizures; (3) she has not been hospitalized for seizures in "quite some time;" (4) she testified to having difficulty with left arm pain; (5) the medical records do not support the alleged frequency of the seizure activity and plaintiff has offered inconsistent allegations regarding how often she has them; (6) plaintiff has not been compliant with her medication regimen; and (7) she has not complained to her doctors about negative side effects from her medications, and takes no prescription pain medications. [AR at 18-19.]

Because plaintiff produced medical evidence of underlying impairments that are reasonably likely to cause the alleged symptoms, medical findings are not required to support the alleged

severity of pain or other symptoms. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to subjective physical complaints); see also Goodenow-Boatsman v. Apfel, 2001 WL 253200, *3 (N.D.Cal. Feb. 27, 2001) ("The same rule applies to other types of subjective symptoms beside pain.").

Rather, the ALJ can reject plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Id.; Benton, 331 F.3d at 1041. If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Here, because there is no evidence of malingering, the ALJ's reasons for rejecting plaintiff's credibility needed to be clear and convincing. Benton, 331 F.3d at 1040. As explained in more detail below, the Court concludes that remand is warranted because, in assessing plaintiff's credibility and determining the veracity of her subjective complaints, the ALJ failed to address pertinent aspects of her testimony. See Benton, 331 F.3d at 1041. The Court also finds that numerous reasons set forth by the ALJ do not meet the "clear and convincing" standard.

For example, the ALJ's statement that plaintiff acknowledged that Dilantin helped control the seizures [AR at 18] is misleading. A review of plaintiff's testimony shows that she

unequivocally stated she *did not* believe the medication either reduced the frequency of the episodes, or alleviated the side effects. [AR at 31-32, 36.][3] Furthermore, the fact that plaintiff had not been hospitalized in "quite some time" is not sufficiently convincing as there is no indication that hospitalization would be an appropriate or effective remedy for her disorder. The record shows that plaintiff reported her seizures to her treating doctors, and there is nothing reflected in the related clinical notes indicating hospitalization was recommended, or that it would be beneficial during or after an episode. The Court also notes plaintiff's testimony where she described how, on past occasions when she had called for an ambulance following a seizure, she ultimately would just receive a dose of Dilantin -- the medication she was already taking -- either at the hospital or at her home. [AR at 35-36.]

Next, contrary to the ALJ's finding that plaintiff never complained to her doctor about negative side-effects from her medications, the record contains evidence that plaintiff could not tolerate the high levels of Dilantin needed to achieve positive results [see AR at 231, 253], and she had to stop taking another medication that increased her heart rate. [AR at 244.] In any event, because plaintiff did not testify that she experienced debilitating side effects from her medications, the fact that no such evidence exists should not serve to weaken her credibility. As for plaintiff's noncompliance with her medication, there is some indication in the record that, on at least a few occasions, she had failed to take the Dilantin as prescribed. [See AR at 239-41.] Yet, the notes also show that even after plaintiff's proper compliance was noted in the record, seizures still occurred. [See AR at 227-28.] Thus, the Court is not persuaded that plaintiff's noncompliance is a convincing reason for rejecting her credibility, as there is no conclusive evidence that all of her seizures could be prevented even when she is consistent with the medication.

On the other hand, the Court agrees with the ALJ's finding that there is a lack of support regarding plaintiff's allegations about the frequency of the seizure activity. Plaintiff described the seizures as occurring "so often," and that she had three or four the week preceding the hearing.

---

[3] Although not at all clear from the decision, if the ALJ was referring to plaintiff acknowledging to medical personnel that the Dilantin controlled her seizures, the evidence in that regard is not conclusive. See infra.

7

She also filled out a seizure questionnaire in which she stated she sometimes has seizures two times a day, or two to three times a week. [AR at 134.]  The record, however, reflects much more sporadic activity.  The clinical notes show that plaintiff reported a much lower frequency rate, with seizures ranging in number from zero to three times *per month*. [See AR at 220, 222-23, 227-28, 231-32, 234, 239-41, 244.]  Moreover, when plaintiff saw her doctor soon after the April 28, 2004, hearing, she did not report any recent seizures despite her testimony to the contrary.  [AR at 218.]  It is reasonable for the ALJ to rely on this evidence and surmise that, had plaintiff experienced the number of seizures she alleges, she would have reported that to her doctors when being treated for her seizure disorder.

       Thus, the Court concludes that the ALJ was justified in finding that plaintiff's allegations of frequent seizures were not credible in the sense that she exaggerated how often they occurred.  This, however, does not end the analysis.  Although it is undisputed that plaintiff has a history of seizures, the ALJ did not make a specific finding as to their frequency, nor did he address plaintiff's allegations regarding their severity.  In particular, the ALJ neglected to address her specific complaints about the side effects she experiences -- namely, the loss of control over urination and bowel movements, the headaches, and the apparent need to sleep for several hours following an episode.  Because these allegations, if accepted, could pose serious limitations in the workplace, it was error for the ALJ to ignore them.[4]  See Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999) ("The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.").

       After fully considering all the evidence regarding plaintiff's testimony, medical record and activities, the Court determines that a substantial number of the ALJ's credibility findings and his interpretation of the record were not sufficiently clear and convincing.  See Reddick, 157 F.3d at

---

[4] Although it appears from a hypothetical provided to the vocational expert that the ALJ has largely rejected these claims [AR at 41-42], he must identify the evidence that undermines plaintiff's claims in this regard.
    Further, the ALJ correctly noted that while plaintiff complains of pain in her left arm, she takes no prescription pain medications.  Although this has bearing on the credibility of those allegations, it is unrelated to the issue of the severity of the seizures.

723. Moreover, as explained above, critical aspects of plaintiff's testimony regarding the severity of her seizures were not addressed. Remand is therefore appropriate for the ALJ to reevaluate plaintiff's credibility and assess her symptom allegations. The ALJ is directed to not only make explicit findings regarding how often plaintiff's seizures occur, but to also determine whether the side effects of the seizures are as severe as plaintiff contends, and how they impact on her ability to work. In the event the ALJ finds plaintiff not credible, he must set forth clear and convincing reasons based on substantial evidence for rejecting the complaints. Because the result of this determination may impact other steps in the analysis, plaintiff's remaining claims will not be addressed at this time.[5]

/
/
/
/
/
/
/
/
/
/
/
/
/

---

[5] The Court notes, however, that a major rationale provided by the ALJ to reject the lay witness testimony of plaintiff's son, i.e., based on his relationship to plaintiff [AR at 19], is precisely the type of reasoning rejected by the Ninth Circuit in Smolen v. Chater, 80 F.3d 1273, 1288-89 (9th Cir. 1996). There, the court concluded that the ALJ erred in rejecting the testimony of the plaintiff's family members for the reason, in part, that as family they were advocates and biased. The court concluded that "the same could be said of any family member who testified in any case. The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." Id. at 1289.

# VI.

# **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to further assess plaintiff's credibility.[6]  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: March 15, 2006

                                                               /S/
                                            PAUL L. ABRAMS
                             UNITED STATES MAGISTRATE JUDGE

---

[6]  In light of the Court's remand order, the Court does not address plaintiff's remaining contentions of error.